UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CBRE, INC., Petitioner, v. LANCE MARINE, Respondent. | Civil Action No. 25-2132 (PLF) |

OPINION

This matter is before the Court on respondent Lance Marine's Motion to Reconsider and to Alter or Amend the Judgment [Dkt. No. 25].[1] On March 30, 2026, this Court entered an Order and Judgment granting petitioner CBRE's motion to confirm arbitration award ("Petition") [Dkt. No. 1] and denying respondent's cross-motion to vacate the award ("Cross Motion) [Dkt.

[1] The Court reviewed the following documents and attachments in connection with the pending motion: CBRE's Petition to Confirm Arbitration Award ("Petition") [Dkt. No. 1]; March 12, 2025 Final Award ("Final Award") [Dkt. No. 1-6]; JAMS Arbitration Order No. 8 ("JAMS Order") [Dkt. No. 1-7]; Amended Final Award ("Am. Final Award") [Dkt. No. 1-8]; Respondent's Cross-Motion to Vacate Arbitral Award [Dkt. No. 12]; Respondent's Memorandum in Opposition to Motion to Confirm Arbitration Award and In Support of Cross-Motion to Vacate Arbitral Award ("Cross Motion") [Dkt. No. 13]; CBRE's Opposition to Cross-Motion to Vacate and Reply in Support of Motion to Confirm Arbitration Award ("Petr's Reply") [Dkt. No. 15]; Respondent's Reply in Support of Motion to Vacate ("Resp's Reply") [Dkt. No. 17]; Order and Judgment of March 30, 2026 [Dkt. No. 18]; Opinion of April 14, 2026 ("Opinion") [Dkt. No. 19]; Respondent's Motion to Reconsider and to Alter or Amend the Judgment [Dkt. No. 25]; Respondent's Memorandum in Support of His Motion to Reconsider and to Alter or Amend the Judgment ("Mot. to Reconsider") [Dkt. No. 26]; CBRE's Opposition to Motion to Reconsider and to Alter or Amend Judgement ("Opp.") [Dkt. No. 29]; and Respondent's Reply in Support of His Motion to Reconsider and to Alter or Amend the Judgment ("Reply") [Dkt. No. 30].

No. 12]. It confirmed the Amended Final Award ("Am. Final Award") [Dkt. No. 1-8] issued by the arbitrator and entered judgment in favor of petitioner and against respondent. See Order and Judgment of March 30, 2026 [Dkt. No. 18]. On April 14, 2026, the Court issued an Opinion explaining the reasoning underlying the Order and Judgment. See Opinion of April 14, 2026 ("Opinion") [Dkt. No. 19].

On April 27, 2026, Mr. Marine filed a Motion to Reconsider and to Alter or Amend the Judgment [Dkt. No. 25] and a Memorandum in Support ("Mot. to Reconsider") [Dkt. No. 26]. CBRE filed its opposition on April 29, 2026. See CBRE's Opposition to Motion to Reconsider and to Alter or Amend Judgement ("Opp.") [Dkt. No. 29]. Mr. Marine filed his reply on May 6, 2026. See Respondent's Reply in Support of His Motion to Reconsider and to Alter or Amend the Judgment ("Reply") [Dkt. No. 30]. Upon consideration of the parties' written submissions, the relevant legal authorities, and the entire record in this case, the Court will deny Mr. Marine's motion to reconsider and to alter or amend the Court's judgment.

## I. FACTUAL BACKGROUND

Petitioner CBRE is a company incorporated under the laws of Delaware with its principal place of business in Dallas, Texas. See Petition ¶ 3. Respondent Mr. Marine is a resident of Virginia. See id. ¶ 4. In 2005, CBRE hired Mr. Marine as a licensed real estate broker. See Am. Final Award at 3. In his seventeen years working for CBRE, Mr. Marine represented occupiers and owners of retail space. See id.

In 2017, CBRE received complaints about Mr. Marine from every one of his supporting staff members. See Am. Final Award at 4. On September 14, 2017, CBRE issued Mr. Marine a memorandum captioned "Inappropriate Conduct," stating that Mr. Marine's offensive communications were "not in accordance with" CBRE's values and that "[f]ailure to

adhere to this expectation and maintain consistent and sustained improvement may result in the termination of your employment from CBRE without further notice." Id. at 4-5. The memorandum emphasized Mr. Marine's at will employment status and required him to "correct [his] behavior immediately." See id. at 5.

As an incentive for his continued employment for the subsequent seven years, CBRE loaned Mr. Marine $300,000 on March 6, 2020. See Petition ¶ 8; Second Addendum to Broker-Salesperson Contract ("Second Add.") [Dkt. No. 1-3] ¶ 34. The terms of the agreement provide that if Mr. Marine's employment is "terminated (i) by CBRE for Cause, or (ii) by [Mr. Marine] for other than Good Reason: . . . [Mr. Marine] shall pay to CBRE the unpaid Principal and Interest pursuant to the terms of the [Promissory] Note." Second Add. ¶¶ 34.7, 34.7(b); see also Promissory Note [Dkt. No 1-2] ¶ 4. The Second Addendum defines "Good Reason," in part, as:

> (i) an uncured material breach by CBRE of any provision of the Employment Agreements or CBRE Policies related to payment or calculation of commissions . . . or (ii) a material diminution or material adverse change in [Mr. Marine's] job title, benefits, or support or position of responsibilities or the nature of [Mr. Marine] duties or the scope of his responsibilities that do not also apply to all salespeople in similar position to [Mr. Marine]; or (iii) an uncured material breach by CBRE of any provision of the Employment Agreements.

Second Add. ¶ 34.9.[2]

In 2021, Mr. Marine was again the subject of numerous complaints from both staff and clients. See Am. Final Award at 5-7. In December 2021, after a temporary period of improved behavior, CBRE issued a Final Written Warning to Mr. Marine. See id. at 8.

[2] The Broker-Salesperson Contract, its multiple addenda, and an Indemnity Agreement collectively form Mr. Marine's "Employment Agreements" or "Employment Contract." See Second Add. ¶ 32.1-32.2; Cross Motion at 3 n.2; Am. Final Award at 1.

On January 14, 2022, Mr. Marine submitted a discrimination complaint to CBRE Human Resources. See Am. Final Award at 10. The ten-paragraph complaint contained "no specific examples of race discrimination." Id. In response, CBRE hired an experienced investigator to investigate the allegations. Id. After a month-long investigation consisting of multiple interviews and the review of numerous policies and documents, the investigator found Mr. Marine to be "only partially credible" and found his claims to be "unsubstantiated." See id. at 10-11.

On January 14, 2022, the same day that he submitted his discrimination complaint to CBRE, Mr. Marine established Winmar Advisory ("Winmar"), a competitor commercial real estate brokerage firm, with the Virginia State Corporation Commission. See Am. Final Award at 20. Mr. Marine had already outlined the formation of the new firm on January 6, 2022, just ten days after the issuance of the Final Written Warning. Id. Mr. Marine made specific plans to "(1) target a start date of February 1, 2022, (2) transition from CBRE to Winmar, and (3) recruit three CBRE employees. . . to join him at Winmar." Id. He even anticipated incurring "CBRE legal fees," explaining that he would initially pay for the fees but would ultimately convert them "to equity in Winmar." See id.

Mr. Marine resigned from CBRE on August 29, 2022. See Petition ¶ 9. The parties disputed whether Mr. Marine resigned for Good Reason. See id. ¶ 10. At the time of his resignation, the parties' relevant legal relationship was governed by the Broker-Salesperson Contract, effective January 1, 2017, and the Second Addendum to the Broker Salesperson Contract, effective January 1, 2020, see Second Add. ¶ 33, which incorporated the terms of the Promissory Note signed by the parties on March 6, 2020. See Broker-Salesperson Contract

("Broker Contract") [Dkt. No. 1-1] ¶ 20; see also Second Add. ¶ 34 ("CBRE agrees (1) to make a loan to Salesperson of $300,000 ('Principal') subject to the terms and conditions of the Promissory Note"); Promissory Note at 2. The Broker Contract provides that "[a]s a condition of employment and pursuant to the Federal Arbitration Act" the parties jointly agree to submit all disputes or claims related to employment or termination —including "claims for discrimination, harassment, and/or retaliation" — "to confidential binding arbitration and waive any right to a jury trial." Broker Contract ¶ 18 A-B. It also states that "CBRE shall pay for all fees and costs of the Arbitrator," and that "[e]ach party shall pay for its own costs and attorneys' fees, if any." Id. ¶ 18 F. The mutual arbitration clause of the Broker Contract is explicitly incorporated into the Second Addendum. See Second Add. ¶ 36. The Promissory Note, which provides the terms for the $300,000 loan, states:

> Should it become necessary for CBRE to take legal action to collect the payment due hereunder and if CBRE prevails in such action, [Mr. Marine] promises to pay all court costs and reasonable attorneys' fees incurred by CBRE. If [Mr. Marine] prevails in such action, CBRE promises to pay all court costs and reasonable attorneys' fees incurred by [Mr. Marine].

Promissory Note ¶ 8; see also Second Add. ¶ 34.

*A. Arbitration Proceedings*

On January 4, 2023, pursuant to the mandatory arbitration clause in the Broker Contract, Mr. Marine filed a Complaint before the JAMS Employment Arbitration Tribunal. See Cross Motion at 3. He brought four claims under the District of Columbia Human Rights Act ("DCHRA") against CBRE and other named individuals, including racial discrimination in the form of disparate treatment and hostile work environment and retaliation in the course of employment. See Am. Final Award at 2; Cross Motion at 3. He also brought an additional fifth

claim of breach of the implied covenant of good faith and fair dealing against CBRE. See Am. Final Award at 2; Cross Motion at 3 n. 1.

In response to Mr. Marine's discrimination claims, CBRE argued that Mr. Marine fabricated his allegations of race-based discrimination, hostile work environment, and retaliation. See Am. Final Award at 2. CBRE brought counterclaims against Mr. Marine for declaratory judgment and monetary relief, arguing that Mr. Marine resigned from CBRE without Good Reason in violation of his Broker Contract and therefore was required to repay the Promissory Note issued to him by CBRE. See Petition ¶ 12; Am. Final Award at 3. CBRE also asserted that Mr. Marine violated the non-solicitation provisions of the Broker Contract. See Am. Final Award at 3. Mr. Marine opposed the counterclaims, alleging that they were brought in retaliation for his claims against CBRE. See id. Mr. Marine filed a Motion for Summary Disposition, which the arbitrator denied on August 2, 2024. See id.

A five-day arbitration hearing took place from September 16 to September 20, 2025 before retired Superior Court Judge John Mott, whom JAMS had appointed as arbitrator. See Am. Final Award at 3. The arbitrator ultimately found that the evidence did not support the allegations of adverse employment action and that there was no credible evidence of any racial discrimination against Mr. Marine. See id. at 12. The arbitrator therefore concluded that Mr. Marine had not proven his claims against CBRE. See id. at 39. The arbitrator noted that "even if Mr. Marine had a good faith belief" when he lodged his discrimination complaint to CBRE Human Resources, "the lack of proof" revealed that the belief was unreasonable. Id. at 27.

In addition, the arbitrator determined that CBRE had successfully proven its counterclaim that Mr. Marine "resigned from CBRE without good reason on August 29, 2022,

and that he therefore must repay the Promissory Note." Am. Final Award at 34; see id. at 37. The arbitrator concluded that Mr. Marine had not proven a violation of the Broker Contract by CBRE or any other "uncured material breach by CBRE of any provision of the Employment Agreements" which would amount to Good Reason. See id. at 34 (quoting Second Add. ¶ 34.9). The arbitrator also found that Mr. Marine failed to provide actual or constructive notice of his resignation for Good Reason and an opportunity for CBRE to cure any material breach. See id. at 36-37 (citing Second Add. ¶ 34.9). Despite Mr. Marine's argument that his prior complaints amounted to notice, the arbitrator found that none of Mr. Marine's work-related complaints were "in any way connected to his resignation which occurred several months later." Id. at 37. The arbitrator also concluded that CBRE had proven its counterclaim that Mr. Marine violated the non-solicitation provision of the Broker Contract by recruiting and hiring two CBRE employees within one year of resigning from CBRE. See id. at 38-39 (citing Second Add. ¶ 32.3).[3]

For these reasons, the arbitrator concluded, pursuant to the terms of the parties' Employment Agreements, that CBRE was entitled to "repayment of the $300,000 Promissory Note, plus interest, costs, and fees related to this limited portion of the arbitration." Am. Final Award at 37 (emphasis added); see also id. at 39.

*B. Attorneys' Fees and Costs*

In addition to requesting repayment of the Promissory Note with interest in light of the arbitrator's findings, CBRE filed a Motion for Fees and Costs related to its proceedings in arbitration. See JAMS Arbitration Order No. 8 ("JAMS Order") [Dkt. No. 1-7] at 1. CBRE

[3] The arbitrator found that CBRE was entitled to judgment in its favor on this breach of contract claim, but that CBRE failed to prove an amount of damages related to the breach. See Am. Final Award at 39.

acknowledged that it was "only contractually entitled to fees and costs through its efforts 'to collect the payment due' on the Promissory Note." JAMS Order at 6. But because Mr. Marine built his DCHRA claims on the same arguments he used in his defense to the CBRE's Promissory Note counterclaim, CBRE maintained that all the time and costs incurred should be reimbursed. Id. CBRE requested only 75% of its fees and costs for the arbitration "as a reasonable way to avoid the inefficient process of reviewing individual line items in this analysis." Id.

Mr. Marine argued that his approach to arbitration was not relevant to CBRE's entitlement to fees and costs "given the narrow statutory basis upon which an award of fees and costs may be based—only efforts 'to collect the payment due' on the Promissory Note." See JAMS Order at 7 (quoting Promissory Note ¶ 8). He maintained that his discrimination and hostile work environment claims and the litigation expenses related to those claims fell into a separate category from the "Good Reason" factors. See id. He argued that those claims "involved entirely different legal standards, statutory frameworks, and factual inquiries than whether he resigned for 'Good Reason' under the terms of the Promissory Note." Id. Mr. Marine also alleged that CBRE's requested fee award was "grossly disproportionate to the $300,000 principal amount at issue," and that "CBRE's claimed hours [we]re excessive and unreasonable for a case of this nature." Id.

The arbitrator rejected Mr. Marine's arguments. He determined that Mr. Marine had constructed his affirmative claims brought under the DCHRA around the same Good Reason factors central to his defense to the Promissory Note counterclaim, namely: (1) discrimination and retaliation; (2) the calculation and payment of commissions; and (3) the purported diminution of his benefits and support. See JAMS Order at 7-8. This resulted in "substantial

overlap" between his claims and his counterclaim. Id. at 8. Placing his "purported" Good Reasons "at the heart of his case," the arbitrator found, "significantly complicated the hearing." Id. The arbitrator nevertheless agreed with Mr. Marine's position that his affirmative discrimination claims were distinct from two of his Good Reason factors—namely, the calculation and payment of commissions and the purported diminution of his benefits and support. See id. at 7-8. The arbitrator explained that "if Mr. Marine had built his case solely around the first alleged Good Reason—discrimination and retaliation—[CBRE] would not be making this same argument because any affirmative DCHRA claim would have involved at least discrimination and/or retaliation" and would not result in any fee shifting. Id. at 8.

Instead, "without credible testimony, or evidentiary support," Mr. Marine attempted to connect other Good Reason evidence to his affirmative DCHRA claims, presenting these claims "around a Good Reason analysis which had no factual basis." JAMS Order at 8, 10. Specifically, Mr. Marine "wove through each stage of this case a lengthy and unconvincing argument that had no evidentiary support that he was treated differently and unfairly by CBRE because of his race, in particular in the calculation and payment of commissions and via the purported diminution of his benefits and support." Id. at 8. The arbitrator found that by "intentionally blending" the Good Reason factors into his discrimination claims, Mr. Marine "unreasonably complicated the presentation, greatly expanded litigation over the Promissory Note, and substantially raised the amount of fees and costs." Id. at 10.

As a result of Mr. Marine's misplaced emphasis, the arbitrator found that two-thirds of the time spent overall, from discovery through the hearing, "related to the overlapping, common core of intertwined Good Reason evidence that [Mr. Marine] injected into the case," and reasoned that it "would be difficult, if not impossible, 'to divide the hours expended on a

claim-by-[counter]claim basis.'" JAMS Order at 10 (second alteration in the original) (quoting Hensley v. Eckerhart, 461 U.S. 424, 435 (1983)). The arbitrator therefore concluded that Mr. Marine is "responsible generally for two-thirds of the total fees and costs incurred by CBRE." Id. On the other hand, he concluded that "the American Rule should apply to . . . approximately one third of the evidentiary presentation in this case" — the portion that would otherwise have been "standard DCHRA claims of discrimination and retaliation." See id. at 10.[4] The arbitrator determined that "the fact that Mr. Marine also argued that this evidence [of discrimination and retaliation] provided Good Reason to resign does not shift fees" to Mr. Marine. Id

The arbitrator determined that based on the Laffey Matrix, CBRE's attorneys' fees were billed at a reasonable hourly rate. See JAMS Order at 4-5 (citing Hernandez v. Press Dry Cleaning, 2021 D.C. Super. LEXIS 342, *11 (D.C. Super. Ct. May 12, 2021) ("The Court uses the Laffey matrix as its preferred standard for assessing a reasonable amount of attorneys' fees based on the attorneys' experience.")). Still, the arbitrator further exercised his discretion, considering Mr. Marine's other arguments "related to billing practices, overbilling, . . . overstaffing," and "general unreasonableness, and out of an abundance of caution," to take the same 25% additional adjustment that CBRE proposed in its fee request on top of the overall two-thirds calculation. See id. at 11-12 (citing Hood v. Jones, 2020 D.C. Super. LEXIS 87, *7 (D.C. Super. Ct. July 1, 2020) (approving of a percentage discount against fees incurred when "it would be impracticable to separate the work performed on the discrete claim upon which

[4] Generally, under the "American rule," each party is responsible for paying its own attorney fees, "and recovers from other litigants only in the presence of statutory authority, a contractual arrangement, or certain narrowly-defined common law exceptions." Synanon Found., Inc. v Berstein, 517 A.2d 28, 35 (D.C. 1986).

Plaintiff was successful and declines to sift through [lengthy] legal … to arrive at an exact figure." (alterations in original))).

## II. LEGAL STANDARD

Rule 59(e) of the Federal Rules of Civil Procedure permits a party to file a motion to alter or amend a judgment within twenty-eight days of the judgment's entry. See FED. R. CIV. P. 59(e). To prevail on a Rule 59(e) motion, the moving party must identify "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Messina v. Krakower, 439 F.3d 755, 758 (D.C. Cir. 2006) (quoting Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996)). "[C]ourts have required 'a very exacting standard'" in assessing "clear error" in the Rule 59(e) context, such that the "final judgment must be 'dead wrong' to constitute clear error." Wannall v. Honeywell Int'l, Inc., Civil Action No. 10-351 (BAH), 2013 WL 12321549, at *3 (D.D.C. Oct. 24, 2013) (first quoting Bond v. U.S. Dep't of Just., 286 F.R.D. 16, 22 (D.D.C. 2012), then Lardner v. FBI, 875 F. Supp. 2d 49, 53 (D.D.C. 2012)). "Indeed, the Seventh Circuit has vividly observed that '[t]o be clearly erroneous, a decision must strike [a court] as more than just maybe or probably wrong; it must . . . strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish." Slate v. Am. Broad. Companies, Inc., 12 F. Supp. 3d 30, 35 (D.D.C. 2013) (quoting Parts & Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F.2d 228, 233 (7th Cir. 1988)).

"The strictness with which [Rule 59(e)] motions are viewed is justified by the need to protect both the integrity of the adversarial process in which parties are expected to bring all arguments before the court, and the ability of the parties and others to rely on the finality of judgments." Mahoney v. United States Capitol Police Bd., Civil Action No. 21-2314 (JEB), 2024 WL 4235429, at *2 (D.D.C. July 31, 2024) (quoting Mohammadi v. Islamic

Republic of Iran, 947 F. Supp. 2d 48, 77 (D.D.C. 2013)). Accordingly, "although courts have 'considerable discretion in ruling on a Rule 59(e) motion,' such motions are 'disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances.'" Owen-Williams v. BB & T Servs., Inc., 797 F. Supp. 2d 118, 124 (D.D.C. 2011) (first quoting Piper v. U.S. Dep't of Justice, 312 F. Supp. 2d 17, 20 (D.D.C. 2004), then Niedermeier v. Office of Baucus, 153 F. Supp. 2d 23, 28 (D.D.C. 2001)). "Rule 59(e) does not provide a vehicle to 'relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" Schoenman v. FBI, 857 F. Supp. 2d 76, 80 (D.D.C. 2012) (quoting Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 n.5 (2008)). Nor does Rule 59(e) provide a vehicle to express "mere disagreement" with a judgment. Wannall v. Honeywell Int'l, Inc., 2013 WL 12321549, at *3. "The moving party carries the burden of demonstrating that relief under Rule 59(e) is warranted." Owen-Williams v. BB & T Inv. Servs., Inc., 797 F. Supp. 2d at 124 (citing Kittner v. Gates, 783 F. Supp. 2d 170, 171-72 (D.D.C. 2011)).

Rule 60 of the Federal Rules of Civil Procedure permits a party to seek reconsideration of a final judgment either (a) to correct a mistake arising from an oversight or omission or (b) to seek relief from a judgment or order due to: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or other misconduct; (4) void judgment; (5) satisfied, released, or discharged judgment; or (6) "any other reason that justifies relief." FED. R. CIV. P. 60(a)-(b). The Supreme Court has held that only "extraordinary" circumstances warrant relief under Rule 60(b)(6). Ackermann v. United States, 340 U.S. 193, 202 (1950). The D.C. Circuit "has cautioned that [Rule 60(b)(6)] 'should be only sparingly used.'" See Twelve John Does v. District of Columbia, 841 F.2d 1133, 1140

(D.C. Cir. 1988) (quoting Good Luck Nursing Home, Inc. v. Harris, 636 F.2d 572, 577 (D.C. Cir. 1980)); see also Epps v. Howes, 573 F.Supp.2d 180, 185 (D.D.C.2008); Campbell v. United States, Civil Action No. 92–0213, 2006 WL 1660798, at *1 (D.D.C. May 30, 2006); Norris v. Salazar, 277 F.R.D. 22, 25 (D.D.C. 2011).

"The granting of a Rule 60(b) motion is discretionary, and need not be granted 'unless the district court finds that there is an intervening change of controlling law, the availability of new evidence or the need to correct a clear error or prevent manifest injustice.'" Mitchell v. Samuels, 255 F. Supp. 3d 212, 214 (D.D.C. 2017) (quoting Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996)). The party seeking relief under Rule 60(b) "bears the burden of establishing that its prerequisites are satisfied." See Toomer v. Austin, No. 20-5184, 2022 WL 301561, at *1 (D.C. Cir. Jan. 21, 2022) (quoting Gates v. Syrian Arab Republic, 646 F.3d 1, 5 (D.C. Cir. 2011) (citation omitted)). "Rule 60(b) motions that repeat arguments already made to and rejected by a district court are often summarily rejected." Id., 2022 WL 301561, at *1 n.2.

## III. DISCUSSION

### *A. Motion to Reconsider*

Mr. Marine first asks the Court to "reconsider its conclusion that the Arbitral Award awarded only fees related to the counterclaim to CBRE." See Mot. to Reconsider at 11 (citing Opinion at 21). He argues that supplemental evidence from the arbitration record "demonstrates that the Arbitral Award did not award CBRE only its fees for litigating its Promissory Note counterclaim, but, instead used the 'common core' doctrine to award 2/3 of fees that were primarily spent defending Mr. Marine's affirmative DCHRA claims." See Mot. to Reconsider at 1; id. at 4 (listing supplemental evidence); see also id. at 6 ("[T]he record makes

clear that 2/3 of CBRE's fees involved blended fees for both the DCHRA and the Promissory Note counterclaim.").[5] Mr. Marine argues that "[u]nder Rule 59, the Court should reconsider and alter or amend its judgment, as it is based on clear error that the underlying Arbitral Award did not award fees for the DCHRA claims." Mot. to Reconsider at 15.

The Court has already addressed Mr. Marine's argument that "the Arbitral Award shifted CBRE's fees for defense of the DCHRA claims to Mr. Marine." See Mot. to Reconsider at 15; Opinion at 20 ("The Court rejects Mr. Marine's assertion that 'there is no question that the legal fees awarded . . . were primarily legal fees defending the DCHRA claims.'") (quoting Resp's Reply at 5). While Rule 59(e) permits a court to alter or amend a judgment, "it may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." Exxon Shipping v. Baker, 554 U.S. 471, 486 n.5 (2008). As for his Rule 60(b) argument, Mr. Marine askes the Court to consider supplemental materials submitted in support of his motion to reconsider. See Mot. to Reconsider at 4. Rule 60(b), however, permits new evidence to serve as a basis for relief only in situations where "with reasonable diligence, [it] could not have been discovered in time to move for a new trial." See FED. R. CIV. P. 60(b)(2). Mr. Marine's motion is not supported by new evidence: each exhibit Mr. Marine attaches is "from the JAMS proceedings" and, therefore, was available to Mr. Marine prior to filing his cross-motion to vacate the arbitral award. See Mot. to Reconsider at 4.

---

[5] Mr. Marine submitted the following additional materials from the JAMS proceedings for the Court's consideration: (1) Respondents' Answer and Counterclaims; (2) Respondents' Motion for Summary Judgment; (3) Claimant/Counter-Respondent Lance LJ Marine's Opposition to Respondents' Motion for Summary Judgment; (4) Respondents' Reply in Support of Their Motion for Summary Judgment; (5) Order No. 7; (6) Respondents' Post-Hearing Brief; (7) Respondents' Response to Claimant's Post-Hearing Brief; (8) Claimant/Counter-Respondent Lance Marine's Post-Hearing Reply; and (9) CBRE's Notice of Supplemental Authority.

As this Court already ruled, "[t]he arbitrator did not apply the Promissory Note's bilateral fee-shifting provision 'in direct conflict with the DCHRA,' and did not 'award CBRE its attorneys' fees on a former employee's DCHRA claims of racial discrimination and retaliation.'" See Opinion at 20-21 (quoting Cross Motion at 10, 21). The Court declines to revisit this issue.

Mr. Marine next argues that the Court "appeared to apply a highly deferential standard" when it "should have applied a de novo [standard] . . . in evaluating whether the Arbitral Award is void as against public policy." Mot. to Reconsider at 11-12. He points to Amtrak v. FOP [sic], in which, he maintains, "the D.C. Circuit did not apply any deferential standard to find a way to uphold the arbitral award; instead, it affirmed the District Court's legal judgment that enforcing the award would conflict with the Inspector General Act and thus was void as against public policy." See Mot. to Reconsider at 12 (citing Nat'l R.R. Passenger Corp. v. Fraternal Ord. of Police, Lodge 189 Lab. Comm., 855 F.3d 335, 338 (D.C. Cir. 2017)). The court of appeals' decision in that case rested on its finding that the specific provision of the collective bargaining agreement at issue there "amounted to an illegal contractual provision" and the arbitrator's opinion and award "show[ed] beyond doubt that the arbitrator was enforcing an illegal contractual term." See id. at 340, 341. Importantly, the D.C. Circuit reviewed that arbitration award pursuant to the Railway Labor Act, not under the Federal Arbitration Act. See id. at 338 ("Although the Railway Labor Act gives district courts jurisdiction to review an arbitrator's award, [45 U.S.C.] § 153 First (q), the grounds on which a court may set aside an award are limited. One of the few such grounds is that the particular contractual provision at issue is contrary to 'law or public policy.'").

The fact that the court of appeals affirmed a district court's order vacating an easily distinguishable arbitration award as void against public policy under the Railway Labor Act does not help Mr. Marine's argument that courts must apply a de novo standard of review to determine whether an arbitral award is void for public policy; neither does his reliance on Metropolitan Municipality of Lima v. Rutas de Lima S.A.C., 141 F.4th 209 (D.C. Cir. 2025). See Mot. to Reconsider at 14 ("The Court distinguished the standard of review on public policy grounds from those of 'claims of factual or legal error.'"). As Mr. Marine acknowledges, in that case, the court of appeals stated that "[i]n addressing whether enforcement of an award should be denied on public policy grounds, [the court] give[s] at least 'substantial deference' to the arbitrator's interpretation of the agreement and 'significant weight to the arbitrator's findings of fact.'" Id. at 219 (quoting Enron Nig. Power Holding, Ltd. v. Fed. Republic of Nig., 844 F.3d 281, 283, 289 (D.C. Cir. 2016)). The court of appeals in Metropolitan Municipality of Lima v. Rutas de Lima S.A.C. also echoed the standard of review articulated by this Court: "[j]udicial review of arbitral awards is extremely limited, and [the court] do[es] not sit to hear claims of factual or legal error by an arbitrator as [it] would in reviewing decisions of lower courts." Id. at 218-19 (quoting Kurke v. Oscar Gruss & Son, Inc., 454 F.3d 350, 354 (D.C. Cir. 2006); see also Opinion at 11. Neither case relied on by Mr. Marine supports his argument that this Court should have applied a de novo, or less "limited," standard of review to Mr. Marine's public policy theory. See Mot. to Reconsider at 14.

The Court is confident that in determining that the arbitral award did not violate public policy, it applied the appropriate "extremely limited" standard of review and gave at least "substantial deference to the arbitrator's interpretation of the agreement and significant weight to the arbitrator's findings of fact." See Metropolitan Municipality of Lima v. Rutas de Lima

S.A.C., 141 F.4th at 218-19 (citations omitted); see also United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. at 45 ("The parties did not bargain for the facts to be found by a court, but by an arbitrator chosen by them . . . . Nor does the fact that it is inquiring into a possible violation of public policy excuse a court for doing the arbitrator's task."). Relying on the arbitrator's interpretation that "CBRE's 'entitlement to attorneys' fees and costs in the present case derives solely from contractual language connected with a single counterclaim,'" see Opinion at 20 (quoting JAMS Order at 9), and the arbitrator's factual finding that "'approximately and not less than two thirds of the time spent overall' on litigation related to Good Reason evidence for the Promissory Note counterclaim," see id. at 19 (quoting JAMS Order at 10), the Court concluded that "the arbitrator did not award attorneys' fees to CBRE for its defense against Mr. Marine's DCHRA claims." See id. at 23. Thus, the Court determined that "the arbitrator could not have violated the public policy Mr. Marine identifies." Id.

Mr. Marine argues that "[u]nder Rule 59 [and Rule 60], the Court should reconsider and alter or amend its judgment, as it is based on clear error that the underlying Arbitral Award did not award fees for the DCHRA claims . . . and manifestly unjust in light of the DCHRA prohibition on shifting attorneys' fees onto a plaintiff employee." See Mot. to Reconsider at 15. Mr. Marine's "mere disagreement" with this Court's judgment fails to meet the "very exacting standard" required for assessing clear error under Rule 59(e). See Wannall v. Honeywell Int'l, Inc., 2013 WL 12321549, at *3. Similarly, Mr. Marine's motion fails to satisfy the "heavy" burden of establishing that extraordinary relief under Rule 60(b) is warranted here. See Est. of Boyland v. United States Dep't of Agric., Civil Action No. 15-01112 (TSC), 2021 WL 4502037 at *2 (D.D.C. Sept. 30, 2021), aff'd, Civil Action No. 21-5237, 2022 WL 1814667 (D.C. Cir. June 1, 2022) (citing Kramer v. Gates, 481 F.3d 788, 792 (D.C. Cir. 2007); see also

United States v. Western Elec. Co., Inc., 46 F.3d 1198, 1204 (D.C. Cir. 1995) (describing the burden of party seeking relief under Rule 60(b) as a "heavy" one).

*B. Motion to Modify*

In the alternative, Mr. Marine asks the Court to modify the arbitral award due to material calculation errors made by the arbitrator in JAMS Arbitration Order No. 8. See Mot. to Reconsider at 15. 9 U.S.C. § 11 provides, in relevant part, that the district court may "make an order modifying or correcting the award upon the application of any party to the arbitration . . . [w]here there was an evident material miscalculation of figures . . . ." See 9 U.S.C. § 11. The arbitrator calculated CBRE's attorneys' fees to total $1,619,973,80, then "reduced [that number] by two thirds [sic] for a subtotal of $1,214,980.35." See JAMS Order at 11. The arbitrator then applied an additional 25% downward adjustment, calculating a final award of $1,313,364.32, plus accruing interest. Id. Mr. Marine asserts that this subtotal is mathematically incorrect: a two-thirds reduction of $1,619,973,80 equals $1,079,982.53 – not $1,214,980.35. See Mot. to Reconsider at 16. As such, the arbitrator's award to CBRE was over $100,000 greater than it should have been. Id. Here, Mr. Marine's calculations are correct.

CBRE does not address the merits of this argument. Rather, it argues that Mr. Marine's request for modification should be denied because it is untimely. See Opp. at 12. Pursuant to 9 U.S.C. § 12, notice of a motion to vacate or modify an arbitration award "must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. As CBRE notes, the final award was filed on June 26, 2025, and this request for modification was filed on April 27, 2026, seven months past the statutory deadline. See Opp. at 12.

In response, Mr. Marine contends that his motion to modify is timely because it "relates back" to his timely cross-motion to modify, and because it "is effectively a motion to amend the cross-motion to vacate." See Reply at 3. Rule 15 of the Federal Rules of Civil Procedure allows "an amendment to a pleading" to "relate[] back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." FED. R. CIV. P. 15(c)(1). Mr. Marine argues that because his cross-motion to vacate the award, filed August 22, 2025, was timely, his motion to modify the award is also timely. See Reply at 3. In support, he asserts that "[c]ourts apply Rule 15 [of the Federal Rules of Civil Procedure] to motions under the FAA, acting as the 'pleadings' in this atypical civil proceeding." Id. (citing Bonar v. Dean Witter Reynolds, Inc., 835 F.2d 1378, 1382 (11th Cir. 1988)).[6]

Mr. Marine's argument fails because courts in this Circuit have consistently held that "a motion is not a pleading." See Gates v. Syrian Arab Republic, 646 F.3d 1, 5 (D.C. Cir. 2011). Rule 7 of the Federal Rules of Civil Procedure "defines pleadings exhaustively and narrowly. See Abdelhady v. George Washington Univ., Civil Action No. 22-01334 (TNM), 2025 WL 605003, at *7 (D.D.C. Feb. 25, 2025), aff'd sub nom. Hdeel Abdelhady, Appellant v. George Washington Univ., et al., Appellees. Additional Party Names: Aramark

[6] Mr. Marine cites only one case supporting his assertion: an Eleventh Circuit panel held that because "[p]roceedings to vacate or confirm an arbitration award are instituted by the filing of a motion in the district court," such a motion "function[s] as the initial pleadings in post-arbitration proceedings in the district court" and because Rule 15 "governs amended and supplemental pleadings in a civil action, [it] should also apply to amended motions to vacate arbitration awards." See Bonar v. Dean Witter Reynolds, Inc., 835 F.2d 1378, 1382 (11th Cir. 1988). Only a few scattered district courts have relied upon the Eleventh Circuit's reasoning, and no other circuit has affirmatively adopted it. See Eletson Holdings, Inc. v. Levona Holdings Ltd., No. 23-CV-7331 (LJL), 2024 WL 4100555, at *20 n.16 (S.D.N.Y. Sept. 6, 2024) (listing cases).

Mgmt. Servs. Ltd. P'ship, Aramark Servs., Inc., PMA Mgmt. Corp., No. 25-7034, 2026 WL 2089753 (D.C. Cir. July 21, 2026) (citing FED. R. CIV. P. 7(a) ("Only these [listed] pleadings are allowed . . . .")); In re Islamic Republic of Iran Terrorism Litigation, 659 F. Supp. 2d 31, 107 (D.D.C. 2009) ("Motions, however, are specifically excluded from the list of 'pleadings' in Rule 7(a)."). Instead, motions are described separately under Rule 7(b), as "a request for an order." FED. R. CIV. P. 7(b).

Furthermore, the courts in this Circuit have "consistently interpreted [9 U.S.C. § 12] to create a strict deadline." See Argentine Republic v. Nat'l Grid Plc, 637 F.3d 365 (D.C. Cir. 2011); see also Dalal v. Goldman Sachs & Co., 541 F.Supp.2d 72, 76 (D.D.C.2008), aff'd, 575 F.3d 725 (D.C.Cir.2009) (noting that there are neither common law nor statutory exceptions to the three month deadline). The arbitrator's error, if any, was detectable at the time of the award's issuance and when Mr. Marine filed his motion to vacate. The deadline to move to modify or vacate the award on these grounds has passed. See 9 U.S.C. § 12.

III. CONCLUSION

For all these reasons, Mr. Marine's Motion to Reconsider and to Alter or Amend the Judgment [Dkt. No. 25] is DENIED. An Order consistent with this Opinion will issue this same day.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 9/4/26